COLT / SINGER / BEA LLP
  Benjamin L. Singer (Bar. No. 264295)
  bsinger@coltsinger.com
  Douglas W. Colt (Bar No. 210915)
  dcolt@coltsinger.com
  Douglas S. Tilley (Bar No. 265997)
  dtilley@coltsinger.com
235 Montgomery Street, Suite 907
San Francisco, CA  94104
Telephone:    (415) 500-6080
Facsimile:     (415) 500-6080

Attorneys for Plaintiff Reason Bradley

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| REASON BRADLEY, an individual,<br><br>Plaintiff,<br><br>v.<br><br>APPLIED MARINE SYSTEMS, LLC, a Nevada limited liability company,<br><br>Defendant. | CASE NO.  13-CV-03941-JSC<br><br>**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF PATENT VALIDITY UNDER 35 U.S.C. §§ 102 AND 103**<br><br>Filing Date:     August 23, 2013<br>Trial Date:       (none set)<br>Hearing Date:  October 9, 2014 at 9:00 a.m. |

**NOTICE OF MOTION AND MOTION**

TO DEFENDANT AND ITS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on October 9, 2014, at 9:00 a.m., or as soon thereafter as the matter may be heard in Courtroom F, 15th Floor of the United States District Court for the Northern District of California located at 450 Golden Gate Avenue, San Francisco, California 95102, Plaintiff Reason Bradley ("Bradley") will and hereby does move for an Order granting partial summary judgment that U.S. Patent No. 8,094,520 is valid under 35 U.S.C. §§ 102 or 103 (Bradley's "Motion").

Bradley's Motion is based on this Notice of Motion and Motion, the below Memorandum of Points and Authorities, the Declarations of Reason Bradley and Benjamin L. Singer submitted concurrently herewith, and such other submissions presented before or at the hearing on Bradley's Motion. .

**TABLE OF CONTENTS**

I. OVERVIEW .................................................................................................................... 1

    A. This Litigation............................................................................................................ 1

    B. Technological Overview ........................................................................................... 2

II. LEGAL STANDARDS.................................................................................................... 3

    A. Summary Judgment................................................................................................... 3

    B. Patent Validity........................................................................................................... 4

III. ARGUMENT .................................................................................................................... 5

    A. The '520 Claims Include Limitations Directed To Repeatable Positioning ................ 5

    B. AMS Cannot Show By Clear and Convincing Evidence That The '520 Claims Are Anticipated Because None Of Its Prior Art Teaches Bradley's Repeatable Positioning ................................................................................................................. 7

    C. Nor Can AMS Show Obviousness By Clear and Convincing Evidence .................... 10

    D. The Validity of the '520 Patent Can and Should Be Adjudicated Now ..................... 10

IV. CONCLUSION ................................................................................................................ 11

# TABLE OF AUTHORITIES

**Cases**

*Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308 (Fed. Cir. 1999) .............................................................. 4

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................................. 3, 4

*Asus Computer Int'l v. Round Rock Research, LLC*, 2014 U.S. Dist. LEXIS 50728 (N.D. Cal. April 11, 2014) ................................................................................................................ 10, 11

*CBS Interactive, Inc. v. Etilize, Inc.*, 257 F.R.D. 195 (N.D. Cal. 2009) ........................................ 10-11

*CFMT, Inc. v. Yieldup Intern. Corp.*, 349 F.3d 1333 (Fed. Cir. 2003) ........................................... 4, 10

*Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570 (Fed. Cir. 1994) .............................................................. 3

*Karsten Mfg. Corp. v. Cleveland Golf Co.*, 242 F.3d 1376 (Fed. Cir. 2001) ................................... 4, 9

*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007) ............................................................................. 5

*Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ............................................. 3-4

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 2006 U.S. Dist. LEXIS 9353 (N.D. Cal. Feb. 24, 2006) .................................................................................................... 10

*Par Pharm., Inc. v. Takeda Pharm. Co.*, 2014 U.S. Dist. LEXIS 100789 (N.D. Cal. July 23, 2014) 11

*Pro-Mold & Tool Co. v. Great Lakes Plastics, Inc.*, 75 F.3d 1568 (Fed. Cir. 1996) ....................... 5, 10

*Server Tech., Inc. v. Am. Power Conversion Corp.*, 2012 U.S. Dist. LEXIS 140133 (D. Nev. Sept. 28, 2012) ............................................................................................................................ 5, 10

**Statutes**

Fed. R. Civ. P. 56(a) .............................................................................................................................. 3

35 U.S.C. § 102 ..................................................................................................................................... 4

35 U.S.C. § 103(a) ................................................................................................................................ 4

35 U.S.C. § 282 ..................................................................................................................................... 4

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Vessel-mounted sonar devices have long been used by hydrographers to survey waterways. For just as long, the industry struggled with a seemingly insolvable problem: every time the sonar head was moved for any number of inevitable reasons, survey personnel were obliged to spend hours painstakingly returning the sonar head to its exact original location in order to ensure the integrity of sonar data. Reason Bradley solved this calibration conundrum problem and was awarded U.S. Patent No.8,094,520 (the "'520 Patent"), each and every claim of which recites a novel "clamp mechanism" and "associated tilt mechanism" that effectively "save" the precise desired positioning of the sonar device so that it can be quickly restored.

The fundamental premise of this Motion is that none of AMS's threadbare prior art contains so much as a whiff of the breakthrough solution disclosed in the '520 Patent. What is more, AMS's litigation choices bar it from showing "good cause" necessary to introduce new prior art: AMS had 14 months to search for prior art before its invalidity contentions were due, declined to request a shred of prior art discovery from Bradley, and opted not to serve a single third party subpoena. AMS chose to take a lackadaisical approach to its invalidity contentions. As a result, AMS is simply without clear and convincing evidence of invalidity, and no reasonable jury could find otherwise.

To spare the parties and the Court wasteful litigation over this clear-as-day issue, Bradley respectfully moves the Court for an Order granting partial summary judgment that the '520 Patent is neither anticipated nor obvious.

## I. OVERVIEW

The information set forth in this section is provided solely as background to help the Court understand the issues presented by this Motion. This Motion does not rest on any of this information.

### A. This Litigation

Bradley brought this patent action against AMS for AMS's infringement of the '520 Patent which is generally directed to a novel sonar mount that allows repeatable, accurate, and precise positioning of an attached sonar head. (Dkt. Nos. 1 ("Complaint"), 1-1 (the '520 Patent).) Bradley is a gifted engineer that owns and operates a company in Sausalito that makes and sells the sonar mount

1
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF PATENT VALIDITY UNDER 35 U.S.C. §§ 102 AND 103
CASE NO. 13-CV-03941-JSC

1  he invented. (Declaration of Reason Bradley in Support of Motion for Partial Summary Judgment of
2  Patent Validity, submitted concurrently herewith ("Bradley Decl."), ¶¶ 2, 15.)

3        This conflict began in late March 2013 when Bradley learned that AMS, a company then
4  unknown to him, was selling a knock-off of his patented mount via a near-verbatim copy of his
5  website. (*Id*. at ¶¶ 16, 17.) On April 17, 2013, Bradley sent AMS a letter demanding that it cease-
6  and-desist its infringement. (*Id*. at ¶ 18, Exh. B.) After AMS refused to stop infringing the '520
7  Patent, Bradley served his Complaint upon AMS on November 14, 2013. (Dkt. No. 11.)

8        The Parties have exchanged contentions under Patent Local Rule ("Patent L.R.") 3-3 as well
9  as identified claim terms and proposed constructions per Patent L.R. 4-1 and 4-2. (Declaration of
10 Benjamin Singer in Support of Motion for Partial Summary Judgment of Patent Validity, submitted
11 concurrently herewith ("Singer Decl."), ¶ 2.) A Claim Construction Hearing is set for January 8,
12 2015. (Dkt. No. 50.) The only term for the Court to construe is "Z-direction," which is not relevant
13 to this Motion.[1] (Singer Decl., ¶ 2.)

14    **B. Technological Overview**

15       To survey waterways, submerged sonar heads emit sound waves and then "listen" for the
16 echoes off the bottom. (Bradley Decl., ¶ 4.) Software analyzes these echoes and uses them to
17 construct an image of the lake bottom or sea floor. (*Id*.)

18       The structure used to attach the sonar head to the survey vessel is called a "sonar mount." (*Id.*
19 at ¶ 5.) Most sonar mounts are added to the boat as an after-market addition, rather than
20 manufactured as part of the vessel. (*Id.*) Sonar mounts generally have two tubes: a first tube that
21 runs across the boat's deck parallel to the water (sometimes called the "X" or "cross" tube) and a
22 second tube, attached to the end of the first, that descends into the water to hold the submerged sonar
23 head (sometimes called the "Z" tube). (*Id.* at ¶ 6.)

24       "Universal" or "off-the-shelf" sonar mounts are mounts that are highly adjustable and can be
25 installed on virtually any vessel. (*Id.* at ¶ 8.) One advantage offered by universal sonar mounts is
26 "tiltability," the ability to bring the sonar head up by simply rotating the cross tube so as to "tilt" the

27

28 ---
[1] As described in the Joint Statement submitted on August 13, 2014 (Dkt. No. 54), the Parties also dispute what the claims require in terms of a yaw adjustment. That issue is also irrelevant to this Motion.

1  Z tube up from its vertical position to a horizontal position above the water and along-side the vessel.
2  For example, survey personnel would routinely use this feature to "tilt" the Z tube and bring the sonar
3  equipment out of the water for inspection or to permit trailering the vessel for transport.  (*Id.* at ¶ 9.)

4  Because a survey will be compromised if the sonar head is out of position by even a tenth of
5  a degree or fraction of an inch, a sonar mount must be "calibrated" to ensure that the sonar head is
6  properly positioned.  (*Id.* at ¶ 10.)  This calibration is an exercise in extreme precision involving a
7  series of adjustments that takes several hours or longer to complete.  (*Id.*)

8  Bradley realized that "tiltability" alone actually saves very little time, effort, and money
9  because the exacting calibration process had to be painstakingly repeated every single time the "tilt"
10 feature was used.  (*Id.* at ¶ 12.)  He determined that the problem rested with the basic tension clamps
11 employed in then-existing mounts:  while they could be loosened or tightened to move or secure the
12 cross tube, such clamps had no way of returning the cross tube to a prior position; every time the
13 cross tube was moved, all minute adjustments made to calibrate the head were "lost."  (*Id.* at ¶ 13.)

14 As disclosed in the '520 Patent, Bradley solved this issue—and eliminated the need for re-
15 calibration—by replacing the traditional basic clamp with a novel "clamp mechanism" and associated
16 "tilt mechanism" that enable tilt functionality while "maintain[ing]" the fine calibration adjustments
17 in order to achieve "repeatable, accurate and precise" positioning.  (*Id.* at ¶¶ 13, 14; '520 Patent, Dkt.
18 No. 1-1, at Summary of Invention, 5:10-18.).

19 **II.  LEGAL STANDARDS**

20     **A.  Summary Judgment**

21 A party is entitled to summary adjudication where "there is no genuine dispute as to any
22 material fact[.]"  Fed. R. Civ. P. 56(a).  In other words, the Court shall grant summary judgment
23 when "[no] reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty*
24 *Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  It is well settled that "summary judgment is appropriate in
25 a patent case where the standards set forth in Rule 56[] are satisfied."  *Conroy v. Reebok Int'l, Ltd.*, 14
26 F.3d 1570, 1575 (Fed. Cir. 1994).

27 Once the moving party shows entitlement to summary adjudication, the non-moving party
28 "must come forward with specific facts showing that there is a genuine issue for trial."  *Matsushita*

1  *Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  To avoid summary judgment, such
2  evidence must be of sufficient caliber and quantity to enable a rational jury to find for the non-
3  moving party; the mere existence of some evidence tending to support the non-moving party's
4  opposition is insufficient.  *See Anderson*, 477 U.S. at 248-49.

5      **B.  Patent Validity**

6      Issued patents, such as the '520 Patent, enjoy "a strong presumption of validity[.]"  *Al-Site*
7  *Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1323 (Fed. Cir. 1999) (citing 35 U.S.C. § 282).  "Hence, an
8  accused infringer who defends on grounds of invalidity bears the burden of showing it by ***clear and***
9  ***convincing evidence***."  *Id.* (emphasis added).  The Supreme Court has explained that "the clear-and-
10 convincing standard of proof should be taken into account in ruling on summary judgment motions."
11 *Anderson*, 477 U.S. at 255.  A party is thus entitled to a summary adjudication of validity if the
12 evidence presented by the nonmoving party is of insufficient caliber or quantity to allow a rational
13 finder of fact to find invalidity by clear and convincing evidence.  *See id.* at 254.

14     A person is not entitled to a patent if (a) the invention was known or used by others in this
15 country, or patented or described in a printed publication in this or a foreign country, before the
16 invention thereof by the patent applicant, or (b) the invention claimed was already patented or
17 described in a printed publication, either in the United States or in a foreign country, more than one
18 year prior to the application date for the patent.  *See* 35 U.S.C. § 102.  A prior art reference
19 "anticipates" (renders invalid) a patent claim under § 102 (a) or (b) only where such reference
20 discloses each and every element as set forth in the asserted claim.  *See Karsten Mfg. Corp. v.*
21 *Cleveland Golf Co.*, 242 F.3d 1376, 1383 (Fed. Cir. 2001) (to anticipate, "all of the elements and
22 limitations of the claim must be shown in a single prior reference, arranged as in the claim.").

23     A claimed invention also is not patentable if the differences between it and the prior art are
24 "such that the claimed invention as a whole would have been obvious before the effective filing date
25 of the claimed invention to a person having ordinary skill in the art to which the claimed invention
26 pertains."  35 U.S.C. § 103(a).  Whether based on one or a combination of references, to invalidate a
27 claim as obvious, the prior art must teach each and every claim limitation.  *See, e.g.*, *CFMT, Inc. v.*
28 *Yieldup Intern. Corp.*, 349 F.3d 1333, 1342 (Fed. Cir. 2003) ("[O]bviousness requires a suggestion of

all limitations in a claim."); *Pro-Mold & Tool Co. v. Great Lakes Plastics, Inc.*, 75 F.3d 1568, 1572-73 (Fed. Cir. 1996) (a combination of prior art references must "together contain all the elements of the invention defined in independent claim 1 of the patent."); *Server Tech., Inc. v. Am. Power Conversion Corp.*, 2012 U.S. Dist. LEXIS 140133, *28 (D. Nev. Sept. 28, 2012) ("[A]s a matter of law, the combination of all prior art references must include all the limitations" of the patented invention) (citing *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418-19 (2007)).

## III. ARGUMENT

### A. The '520 Claims Include Limitations Directed To Repeatable Positioning

The '520 Patent issued on January 10, 2012, with one independent claim (claim 1) and seven dependent claims. (Dkt. No. 1-1)  The '520 claims recite the tiltable, universal sonar mount Bradley invented, and each and every claim includes limitations directed to "allow[ing] repeatable, accurate, and precise alignment of a sonar head to a boat."  (*Id.* at Summary of Invention.)  Claim 1 reads:

> 1. A tiltable mount, comprising:
>
> [a] a base having an attachment mechanism for securing said mount to a vehicle surface;
>
> [b] a clamp mechanism, secured to said base;
>
> [c] a cross tube, coupled to said clamp mechanism, wherein said clamp mechanism comprises a mechanism that is operable to release said cross tube to establish any of a selected Z direction and pitch adjustment, and said clamp mechanism is operable to secure said cross tube to maintain said Z direction and/or pitch established adjustment during operation of said mount;
>
> [d] a Z tube, coupled substantially perpendicular to an axis of said cross tube at an end of said cross tube;
>
> [e] an equipment mount positioned at at least one end of said Z tube;
>
> [f] a Z tube coupling mechanism for effecting said coupling of said Z tube to said cross tube, wherein said Z tube coupling mechanism is operable to release said Z tube to establish any of a selected Z direction and yaw adjustment, and said Z tube coupling mechanism is operable to secure said Z tube to maintain said established Z direction and/or yaw adjustment during operation of said mount; and
>
> **[g] a tilt mechanism associated with said clamp mechanism that is operable to release said cross tube for rotation about said cross tube axis to effect tilting of equipment mounted to said equipment mount, said tilt mechanism further comprising a lock mechanism that is operable to secure said cross tube at a selected position;**

**[h] wherein said clamp mechanism maintains said established cross tube Z direction and/or pitch adjustment relative to said tilt mechanism during operation thereof.**

(*Id*. at Claim 1, 4:55-5:18, bolding added.)

The preamble and limitations 1[a] - [f] of the '520 Patent—none of which are at issue in this Motion—claim the basic elements of the tiltable, universal mount described in the specification and shown in Figure 4 below: the base that secure the mount to the vessel (1[a]), the releasable and lockable clamp mechanism that holds and permits adjustment of the cross tube (1[b] and [c]), the coupling mechanism at the end of the cross tube that releases, secures, and permits adjustment of the Z tube (1[d] and [f]), and an equipment mount to hold the sonar equipment (1[e]).



This Motion rests on limitations 1[g] and 1[h], which claim Bradley's novel "clamp mechanism" and associated "tilt mechanism" that preserve the calibration adjustments so that they may be quickly and precisely restored after tilting.

Limitation 1[g] recites a "tilt mechanism associated with said clamp mechanism" that must be capable of two things: (1) "releas[ing the] cross tube for rotation … to effect tilting[;]" and (2) "secur[ing the] cross tube at a selected position." (*Id.* at 5:10-13.) Building upon the basic clamp mechanism disclosed in limitations 1[b] and [c], limitation 1[h] further recites that the "clamp mechanism maintains said established cross tube Z direction and/or pitch adjustment relative to said tilt mechanism during operation thereof." (*Id.* at 5:16-18.) In other words, when the tilt mechanism

1  operates to allow the cross tube to rotate, the clamp mechanism "maintains" the adjustments made to
2  the cross tube during calibration, so as to not "lose" them as the basic clamp of the prior art did.

3       Taken together, limitations 1[g] and [h] require that the sonar mount have a "clamp
4  mechanism" and an associated "tilt mechanism" that (1) allow the cross tube to "rotat[e]" to "effect
5  tilting" of the Z tube and also to be secured in a "selected position;" while (2) "maintain[ing]" the
6  fine calibration adjustments made to the cross tube such that it can be precisely returned to its proper
7  position without recalibration. This "is what allows the sonar head unit to have exact pitch angle
8  adjustments to be made for a given vessel, ***and then repeatably rotated out of the water and back***
9  ***again***[.]" (*Id*. at 4:33-36; *see also id*. at Summary of Invention (the disclosed sonar mount "allows
10  ***repeatable***, accurate and precise alignment of a sonar head to a boat.") (emphases added).)

11       As shown below, AMS's prior art contains not a whiff of either limitation 1[g] or [h]. In fact,
12  all the Court need understand to grant this Motion is that limitations 1[g] and [h] plainly require more
13  that the basic clamp of the prior art, because nothing further is disclosed in AMS's references.

14      **B. AMS Cannot Show By Clear And Convincing Evidence That The '520 Claims Are**
15          **Anticipated Because None Of Its Prior Art Teaches Bradley's Repeatable Positioning**

16       On June 18, 2014, AMS elected to serve its invalidity contentions without seeking any
17  invalidity-related discovery from Bradley and without serving any prior art subpoenas on third
18  parties. (Singer Decl., ¶¶ 3, 4; Exh. A.) Not surprisingly, AMS's invalidity contentions are
19  threadbare, charting a single reference—U.S. Patent No. 3,989,216 ("Veatch")—and referring
20  vaguely to unmarked, unannotated photos of a "sonar mount … offered for sale and/or publicly
21  known or used… by Kevin Tweed," and a "split clamp… offered for sale and/or publicly known or
22  used … by Finnegan for Culver City Hughes." (*Id*. at Exh. A.)[2]

23       AMS's prior art is just as lacking in quality as it is in quantity—neither the Veatch reference
24  nor the non-patent references so much as hint at the repeatable positioning capability disclosed in
25  limitations 1[g] and [h]. Rather, AMS's prior art discloses nothing more than a basic clamp that
26  could be loosened and tightened but had no ability to preserve adjustments or return to previous

27
28  [2]    As detailed further below, AMS's notice with respect to these non-patent references is insufficient and the Court may properly exclude them, but need not do so to grant this Motion.

1  positions.  No reasonable jury could find that AMS could carry its burden to show by clear and

2  convincing evidence that the asserted claims are anticipated.

### 1. The Veatch Reference Cannot Anticipate The '520 Claims Because It Does Not Disclose The Recited "Clamp Mechanism" And "Tilt Mechanism"



5  Issued nearly 40 years ago, U.S. Patent No. 3,989,216 ("Veatch") teaches a "transducer mounting bracket" intended to simplify aiming of transducer devices beneath a boat.  As shown in the figure to the right, Veatch accomplishes this as follows.  A first shaft (27) is placed through a first collar (29) welded at a 90-degree angle to a second shaft (41), which is secured to a boat by a second collar (43).  A transducer device is affixed to a mount (75) at one end of the first shaft, and rotated around the axis of that first shaft by manipulating a handle (95) connected the other end of the first shaft.  The first shaft may be rotated or moved up or down and secured within the first collar, thus altering

20  the position and depth of the submerged transducer device, by loosening and tightening wing bolts

21  (37, 39).  Similarly, the position of the second shaft (41) may be adjusted and secured by loosening or

22  tightening threaded member (45) and bolt (51).   In this way, Veatch resembles the "traditional"

23  mount and clamp assembly described in claim limitations 1[a] through 1[f] of the '520 Patent.

24  The key for this Motion is that Veatch does not come close to disclosing any way to

25  "maintain" the adjustments made in order to quickly restore the second shaft (41) (Veatch's

26  functional analog of the cross tube in the '520 Patent) to its original desired position.  Rather, when

27  the second shaft is moved, *there is no way to restore it to its original position short of painstaking*

28  *manual re-calibration*.  That Veatch does not concern itself with the breakthrough achieved by

Bradley 40 years later is unsurprising: in an age where brackets were "generally mount[ed] the transducer in a fixed position" such that any adjustment "require[d] removal of the bracket from the water and manual manipulation into another fixed position[,]" the "object" of Veatch's invention was simply to provide a more easily adjustable bracket. (Veatch at 1:20-34.) How to preserve those adjustments for later re-positioning was an unstated problem left for someone else to solve.

The absence of any disclosure of a "tilt mechanism" or any way to "maintain" the position of the second shaft damns any effort to show, let alone by clear and convincing evidence, that Veatch anticipates the '520 claims. *See Karsten Mfg. Corp.*, 242 F.3d at 1383 (to anticipate, a prior art reference must disclose *each and every element* as set forth in the asserted claim).

### 2. Even If AMS Could Rely on It, AMS's "Sonar Mount" Reference Similarly Fails To Disclose Each and Every Limitation of the Asserted Claims

To the extent AMS appears to believe that the "sonar mount" referenced in its invalidity contentions anticipates any claim of the '520 Patent,[3] AMS is wrong. First, the images appended to AMS's invalidity contentions show only single tube (*see* Singer Decl., Exh. A at AMS000012-13), whereas the asserted claims teach *both* a cross tube *and* a Z tube. Second, AMS's invalidity contentions are silent as to the whether the single depicted tube may be moved, as taught by the asserted claims. Finally, even assuming the existence of multiple tubes which may be moved, AMS's "sonar mount" discloses no way to "maintain" tube positioning in order to effect "repeatable" adjustments without cumbersome manual re-calibration. Each of these is independently and inescapably fatal to AMS's anticipation position, and Bradley is entitled to summary adjudication. *See Karsten Mfg. Corp.*, 242 F.3d at 1383.

But the Court need not get that far, as AMS's invalidity contentions fail to include a chart "identifying where specifically in [its 'sonar mount'] each limitation of each asserted claim is found[.]" Patent L.R. 3-3(c). AMS's sole chart cites exclusively to Veatch. Because AMS's invalidity contentions thus plainly fail to satisfy "the specificity requirements of Patent Local Rule 3-3(c)[,]" AMS may not seek to argue that its "sonar mount" anticipates any claim of the '520 Patent.

---

[3] With respect to the "sonar mount" referenced in AMS's invalidity contentions, AMS states that "[t]o the extent that that [sic] the foregoing sonar mount does not disclose every limitation of the asserted claims[,]" thus potentially raising an anticipation argument. (Singer Decl., Exh. A at 1:9-11.)

1  *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 2006 U.S. Dist. LEXIS 9353,
2  *12-13 (N.D. Cal. Feb. 24, 2006) (Rule 3-3(c) requires "detailed, claim-by-claim, element-by-
3  element claim charts" mapping each purportedly invalidating reference against each asserted claim).

### C. Nor Can AMS Show Obviousness By Clear and Convincing Evidence

Bradley is similarly entitled to summary adjudication of non-obviousness because AMS cannot show that any cited reference, either alone or in combination with others, teaches each and every limitation of the asserted claims.  *See, e.g.*, *CFMT*, 349 F.3d at 1342 ("[O]bviousness requires a suggestion of all limitations in a claim.").  As a matter of law, because no single reference discloses any way to "maintain" mount adjustments so as to permit "repeatable" positioning without manual re-calibration, no combination of those references can render obvious any claim of the '520 Patent. *See Pro-Mold & Tool Co.*, 75 F.3d at 1572-73 (a combination of prior art references must "together contain all the elements of the invention defined in independent claim 1 of the patent."); *Server Tech., Inc.*, 2012 U.S. Dist. LEXIS 140133 at *28 ("[A]s a matter of law, the combination of all prior art references must include all the limitations" of the patented invention).

In addition, AMS's invalidity contentions regarding obviousness only circularly assert that the claims are obvious because they "would have been obvious," without any attempt to explain ***why*** as required by Patent L.R. 3-3(b).  Accordingly, the Court may properly find that AMS is not entitled to assert obviousness at all, but need not do so to grant this Motion.

### D. The Validity of the '520 Patent Can and Should Be Adjudicated Now

The Motion presents a simple issue:  is the art cited in AMS's invalidity contentions—the only art on which AMS is entitled to rely—capable of clearly and convincingly demonstrating anticipation and/or obviousness? As shown above, the answer is just as simple:  no.

AMS, and any expert it may retain, is limited to the references cited in its invalidity contentions; Patent L.R. 3-3(c) is "designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." *Asus Computer Int'l v. Round Rock Research, LLC*, 2014 U.S. Dist. LEXIS 50728, *6-8 (N.D. Cal. April 11, 2014). The only exception would be if AMS demonstrated the "good cause" necessary to obtain leave to amend, which it cannot.  Patent L.R. 3-6; *see also CBS Interactive, Inc. v. Etilize, Inc.*, 257 F.R.D.

1    195, 201 (N.D. Cal. 2009).  AMS's utter lack of diligence prevents such a showing.  *See, e.g.*, *Par*

2    *Pharm., Inc. v. Takeda Pharm. Co.*, 2014 U.S. Dist. LEXIS 100789, *8 (N.D. Cal. July 23, 2014).

3    AMS has already had ***over 14 months*** before submitting its invalidity contentions to search for prior

4    art, and declined to seek any prior art from Bradley or serve a single prior art subpoena.  (Singer

5    Decl., ¶¶ 4, 5; Bradley Decl. Exh. B.)  To permit AMS to amend on these facts would entirely

6    undermine the purpose of this Court's Patent Local Rules, *see Asus Computer Int'l*, 2014 U.S. Dist.

7    LEXIS 50728 at *6-8, as well as prejudice Bradley who has relied on AMS's contentions in

8    complying with Patent L.R.s 4-1 and 4-2 and in mediating this dispute.

9        It is irrelevant that there is not yet a claim construction order.  None of the terms that the

10   Court may construe will affect this Motion.  No interpretation of "Z Direction" – or any other term –

11   could possibly cure the shortcomings in AMS's prior art.

## **CONCLUSION**

13       For all the reasons shown above, AMS cannot demonstrate anticipation or obviousness

14   because none of its prior art discloses, at least, two critical limitations that appear in each '520 claim.

15   Thus, this Motion presents a chance for the Court to materially streamline this litigation and preserve

16   its and the parties' resources by barring further litigation on an issue that is as ready for decision as it

17   will ever be.

19   Date:  8/27/2014                          Respectfully submitted,

20                                         COLT / SINGER / BEA LLP

21                                         By:  /s/ Benjamin L. Singer
                                             Benjamin L. Singer
                                             Douglas W. Colt
                                             Douglas S. Tilley
                                             *Attorneys for Plaintiff Reason Bradley*