1

2

3

4

5

6

7

8

9

10 UNITED STATES DISTRICT COURT

11 NORTHERN DISTRICT OF CALIFORNIA

12

13 | REASON BRADLEY,

Plaintiff,

14

15 | v.

16 | APPLIED MARINE SYSTEMS LLC,

Defendant.

17

Case No.  13-cv-03941-JSC

**CLAIM CONSTRUCTION ORDER**

Re: Dkt. Nos. 73 & 74

18

19        Plaintiff Reason Bradley alleges Defendant Applied Marine Systems LLC infringes U.S.

20 Patent No. 8,094,520 (the "'520 Patent").  The parties have asked the Court to construe two

21 disputed claim terms.[1]

22                              **THE PATENT-IN-SUIT**

23        This lawsuit involves sonar mounts for boats and ships.  Sonars play an important role in

24 ship navigation, dredging compliance, finding underwater objects, maintaining safe waterways,

25 and mapping.  The '520 Patent relates to a sonar mount that "allows repeatable, accurate and

26 precise alignment of a sonar head to a boat."  *See* '520 Patent Col. 1:49-51.  The sonar mount has

27 ───────────────

28 [1] The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

United States District Court
Northern District of California

a tilt mechanism which (1) "allows the sonar head to be lifted to a position that is substantially parallel to the boat's deck, thus facilitating placement of the boat on a trailer without the need to remove the sonar head from the boat"; (2) allows the sonar pole to lock in the fore or aft position on the vessel when transiting in the water"; and (3) "doubles as a breakaway safety mechanism." *Id*. at Col. 1:51-57.

## LEGAL STANDARDS

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp*., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (internal quotation marks and citations omitted).  Generally, claim terms are given the ordinary and customary meaning that would be ascribed to them by a person of ordinary skill in the field of the invention.  *Id*. at 1312–13; *see also Rexnord Corp. v. Laitram Corp*., 274 F.3d 1336, 1342 (Fed. Cir. 2001) ("[U]nless compelled to do otherwise, a court will give a claim term the full range of its ordinary meaning as understood by an artisan of ordinary skill").  Ordinary and customary meaning is not the same as a dictionary definition. "Properly viewed, the 'ordinary meaning' of a claim term is its meaning to the ordinary artisan after reading the entire patent.  Yet heavy reliance on the dictionary divorced from the intrinsic evidence risks transforming the meaning of the claim term to the artisan into the meaning of the term in the abstract, out of its particular context, which is the specification." *Phillips*, 415 F.3d at 1321.

The most "significant source of the legally operative meaning of disputed claim language" is the intrinsic evidence of record, that is, the claims, the specification and the prosecution history. *Vitronics Corp. v. Conceptronic, Inc*., 90 F.3d 1576, 1582 (Fed. Cir. 1996).  This is because "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313.  Thus, "[t]he inventor's words that are used to describe the invention—the inventor's lexicography—must be understood and interpreted by the court as they would be understood and interpreted by a person in that field of technology." *Multiform Desiccants, Inc. v. Medzam, Ltd*., 133 F.3d 1473, 1477 (Fed. Cir. 1998); *see also ACTV, Inc. v. Walt Disney Co*., 346 F.3d 1082, 1088 (Fed. Cir. 2003) ("the context of the surrounding

United States District Court
Northern District of California

words of the claim also must be considered in determining the ordinary and customary meaning of those terms"). In some cases, the specification may reveal a "special definition" given by the inventor that differs from the meaning the term might otherwise possess. *Phillips*, 1415 F.3d at 1316. In such instances, "the inventor's lexicography governs." *Id*. Similarly, a specification may reveal "an intentional disclaimer, or disavowal, of claim scope by the inventor." *Id*.

While claims are to be construed in light of the specification, courts must be careful not to read limitations from the specification into the claim. *Phillips*, 415 F.3d at 1323. For example, if a patent specification describes only a single embodiment of a claimed invention that does not mean the claims of the patent necessarily must be construed as limited to that embodiment. *Id*. Rather, the purpose of the specification "is to teach and enable those of skill in the art to make and use the invention" and often the best way to do so is to provide an example. *Id*. However, the court "cannot look at the ordinary meaning of the term. . . in a vacuum. Rather, [it] must look at the ordinary meaning in the context of the written description and the prosecution history." *Medrad, Inc. v. MRI Devices Corp*., 401 F.3d 1313, 1319 (Fed. Cir. 2005).

## CONSTRUCTION OF CLAIM TERMS

The parties jointly submitted two claim terms for construction consistent with Patent Local Rule 4-3 and the Court's Case Management Order. The two terms are (1) "Z direction," and (2) "any of a selected Z direction and yaw adjustment." The disputed claim terms appear in Claim 1 of the '520 Patent which provides:

> **1.** A tiltable mount, comprising:
>
> a base having an attachment mechanism for securing said mount to a vehicle surface;
>
> a clamp mechanism, secured to said base;
>
> a cross tube, coupled to said clamp mechanism, wherein said clamp mechanism comprises a mechanism that is operable to release said cross tube to establish **any of a selected Z direction and pitch adjustment**, and said clamp mechanism is operable to secure said cross tube to maintain said **Z direction** and/or pitch established adjustment during operation of said mount;
>
> a Z tube, coupled substantially perpendicular to an axis of said cross tube at an end of said cross tube;
>
> an equipment mount positioned at least one end of said Z tube;
>
> a Z tube coupling mechanism for effecting said coupling of said Z tube to said cross tube, wherein said Z tube coupling mechanism

3

is operable to release said Z tube to establish **any of a selected Z direction and yaw adjustment**, and said Z tube coupling mechanism is operable to secure said Z tube to maintain said established **Z direction** and/ or yaw adjustment during operation of said mount; and

a tilt mechanism associated with said clamp mechanism that is operable to release said cross tube for rotation about said cross tube axis to effect tilting of equipment mounted to said equipment mount, said tilt mechanism further comprising a lock mechanism that is operable to secure said cross tube at a selected position;

wherein said clamp mechanism maintains said established cross tube **Z direction** and/or pitch adjustment relative to said tilt mechanism during operation thereof.

'520 Patent Col. 4:55-5:18 (disputed terms in bold).

After considering the parties' briefing, the oral and written arguments presented at the *Markman* hearing, and for the reasons explained below, the disputed terms are construed as follows.

### A. "Z Direction"

| Claim Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "Z direction" | "adjustment of said [cross or Z] tube in/out of said [clamp or Z tube coupling] mechanism" | "the direction that allows the mount to effect a proper height or depth for the sonar head." |

As an initial matter, the Court notes that Plaintiff interchangeably refers to the term requiring construction as "Z direction" and "Z direction adjustment;" however, the latter term is not contained in either the claim or specification. The Court thus assumes for purposes of this Order that the term in dispute is "Z direction."

The parties appear to agree that the patentee coined the term "Z direction." "Acting as lexicographer, the patentee may either define a term used in a claim differently from its ordinary meaning or coin a new term." *Phase Four Indus., Inc. v. Marathon Coach, Inc.*, No. 04-04801, 2006 WL 3742216, at *4 (N.D. Cal. Dec. 19, 2006). Plaintiff proposes that the term "Z direction" be construed as "adjustment of said [cross or Z] tube in/out of said [clamp or Z tube coupling] mechanism." In other words, that "Z direction" is moving the cross tube or Z tube in/out. Defendant, in contrast, proposes that "Z direction" means "the direction that allows the mount to

4

United States District Court
Northern District of California

effect a proper height or depth for the sonar head." In practical terms, Defendant's proposed construction means the "Z direction" is limited to the Z tube; that is, the tube that allows the mount to effect a proper height or depth for the sonar head. Defendant's construction is not persuasive.

First, the claim language itself directs a construction of "Z direction" that includes the Z tube *and* the cross tube. *See Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998) ("The appropriate starting point [ ] is always with the language of the asserted claim itself."). Claim 1 includes five references to "Z direction:" three in reference to the movement of the cross tube and two in reference to the movement of the Z tube. *See, e.g.*, '520 Patent Col. 4:60-62 ("a mechanism that is operable to release said cross tube to establish any of a selected Z direction and pitch adjustment"); Col. 5:4-7 ("Z tube coupling mechanism is operable to release said Z tube to establish any of a selected Z direction and yaw adjustment"); Col. 5:16-18 ("maintains said established cross tube Z direction and/or pitch adjustment relative to said tilt mechanism during operation thereof.")

Second, the specification is consistent with a construction of "Z direction" that includes movement of the Z tube and cross tube. Figure 4 and the corresponding portion of the specification are reproduced below:



FIG. 4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

> In **FIG. 4**, it can be seen that the X tube is adjustable in an (in/out) direction **42** and the pitch of the cross tube is adjustable **43**. These adjustments are made possible by a clamping mechanism comprising a tube collar assembly **44** (discussed below). When the clamping mechanism is released, the cross tube is movable to adjust the cross tube's pitch and Z position. The Z position adjustment allows the Z tube (and the sonar head) to be positioned relative to the side of the boat when the sonar head is lowered into the water. Thus, this adjustment allows precise setting of the spacing of the sonar head from the side of the boat.

'520 Patent Col. 2:65-67. This language and the figure demonstrate that the cross tube is adjustable in two ways: the in/out direction and the pitch. It further demonstrates that the in/out direction is an adjustment of the "Z position," and that the adjustment in the in/out direction is the only cross tube[2] adjustment other than a pitch adjustment. Thus, the adjustment of the "Z position" in Figure 4, that is, the in/out direction, must be the "Z direction" in claim 1; to construe "Z direction" otherwise would exclude the only embodiment described in the specification. This the Court should not do. *See Pfizer Inc. v. Teva Pharm., USA, Inc.*, 429 F.3d 1364, 1374 (Fed. Cir. 2005).

Defendant hinges its construction on the single reference to "Z direction" in the specification, likewise in reference to Figure 4: "[t]he Z tube is secured to the cross tube by the Z clamp assembly **30**. The Z clamp assembly allows adjustment of the Z tube in the **Z (in/out) direction 41** to effect a proper height or depth for the sonar head, and it also allows a yaw adjustment **40** to position the sonar head parallel to the boat." '520 Patent Col. 3:23-27 (emphasis added). Defendant contends that this language requires defining "Z direction" as being limited to the in/out direction of the Z tube. In other words, because the patentee described the cross tube as adjustable in "an (in/out) direction," but described the Z tube as adjustable in the "Z (in/out) direction" "Z direction" cannot include adjustment of the cross tube. Defendant insists further that if the patentee had intended the "(in/out) direction" and "Z (in/out) direction" to mean the same thing, he would not have identified them as separate directions in Figure 4 and given them different numbers (41 and 42.) Defendant proposes that, instead, "Z direction" as used in the claims must be limited to the Z tube, and in particular, to the direction of the Z tube that allows the

---

[2] The '520 Patent refers to "X tube" and "cross tube" interchangeably.

6

United States District Court
Northern District of California

1  mount to effect a proper height or depth for the sonar head.

2      There are several problems with Defendant's proposed construction.  First, and most

3  importantly, it ignores that "Z direction" appears throughout claim 1 and thus violates the rule that

4  the Court look first at the language of the claims in construing any term.  *See Comark Commc'ns,*

5  *Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998).  Defendant's proposal turns this rule

6  on its head and instead looks first at the specification while ignoring the claim language.  As

7  Plaintiff correctly points out, Defendant's construction would render "Z direction" as used in the

8  claims nonsensical.  For example, if Defendant's definition were inserted into claim 1 for "Z

9  direction" it would result in the following: "a mechanism that is operable to release said cross tube

10 to establish any of a selected [direction that allows the mount to effect a proper height or depth for

11 the sonar head] and pitch adjustment," *see* '520 Patent Col 4:60-62; and "Z tube coupling

12 mechanism is operable to release said Z tube to establish any of a selected [direction that allows

13 the mount to effect a proper height or depth for the sonar head] and yaw adjustment"), and *see id*.

14 at Col. 5:4-7; "established cross tube [direction that allows the mount to effect a proper height or

15 depth for the sonar head] and/or pitch adjustment relative to said tile mechanism during operation

16 thereof," *see id.* at Col. 5:16-18.  Such construction does not make sense and would not be

17 understood by one skilled in the art.

18     Second, Defendant's proposed construction adds unnecessary verbiage. The specification

19 language upon which Defendant relies for its construction states "the Z (in/out) direction."

20 Defendant's proposed construction includes additional language and a limitation—"to effect a

21 proper height or depth for the sonar head"—not present in the claim.  The Court must be wary of

22 "improperly importing a limitation from the specification into the claims." *Retractable Techs., Inc.*

23 *v. Becton*, 653 F.3d 1296, 1305 (Fed. Cir. 2011).  Thus, for example, "if an apparatus claim recites

24 a general structure without limiting that structure to a specific subset of structures, we will

25 generally construe the term to cover all known types of that structure that the patent disclosure

26 supports."  *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998).

27     Third, there is nothing inconsistent about the "Z direction" applying to two different

28 numbers in Figure 4 of the specification.  Number 41 refers to the Z direction of the Z tube and

number 42 refers to the Z direction of the cross tube. The Court thus rejects Defendant's proposed construction.

Plaintiff's construction is likewise problematic, although less so. Plaintiff proposes "adjustment of said [cross or Z] tube in/out of said [clamp or Z tube coupling] mechanism." This construction, too, adds unnecessary language, which is perhaps why Plaintiff suggests that the Court could instead adopt a simpler construction: "in/out adjustment." (Dkt. No. 73 at 12:25-27.)

The Court adopts the construction "in/out direction" for the term "Z direction." Plaintiff has not advanced any argument in favor of the use of the word adjustment in lieu of direction and the Court favors a construction which is based on the plain language of the claim which refers to "direction" rather than "adjustment."

**B.   "Any of a selected Z direction and yaw adjustment"**

| Claim Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "Any of a selected Z direction and yaw adjustment" | "One or more of a selected Z direction adjustment and yaw adjustment | None. |

Both parties agree that the phrase "any of a selected Z direction and yaw adjustment" should be given its plain meaning, although they differ as to what that plain meaning is. The relevant language from claim 1 is as follows:

> a Z tube coupling mechanism for effecting said coupling of said Z tube to said cross tube, wherein said Z tube coupling mechanism is operable to release said Z tube to establish **any of a selected Z direction and yaw adjustment**, and said Z tube coupling mechanism is operable to secure said Z tube to maintain said established Z direction and/or yaw adjustment during operation of said mount;

'520 Patent Col. 5:3-10 (emphasis added). Plaintiff contends that "any of a selected" means "one or more of" and that the term should be read in the disjunctive. Defendant contends that no construction is necessary, but nonetheless argues that the terms "Z direction" and "yaw adjustment" must be read in the conjunctive given that they are preceded by "any of a" and joined by an "and." The dispute boils down to whether the claim requires a Z tube coupling mechanism which establishes a Z direction *and* a yaw adjustment.

8

United States District Court
Northern District of California

1    Defendant's reading of the phrase is predicated on the Federal Circuit's decision in

2    *SuperGuide Corp. v. DirecTV Enterprises, Inc*., 358 F.3d 870 (Fed. Cir. 2004), where the court

3    interpreted "first means for storing *at least one of* a desired program start time, a desired program

4    end time, a desired program service, and a desired program type" in the conjunctive; that is, one of

5    a desired program start time, one of a desired program end time and so on.  *Id*. at 884 (emphasis

6    added).  Defendant insists that "any of a" followed by two items joined by an "and" is in essence

7    the same as "at least one of a" followed by a list of items joined by an "and."  In *SuperGuide*, the

8    court concluded that because "phrase 'at least one of' precedes a series of categories of criteria,

9    and the patentee used the term 'and' to separate the categories of criteria, [it] connotes a

10   conjunctive list."  *Id*. at 886.  In doing so, the court applied the grammatical principle that "an

11   article o[r] a preposition applying to all of the members of the series must either be used only

12   before the first term or else be repeated before each term."  *Id*. (internal citation and quotation

13   marks omitted).

14   *SuperGuide*, however, is distinguishable.  First, grammatically, the phrase "any of a

15   selected" is not the same as "at least one of" where, as here, there is an adjective that modifies

16   both items in the phrase.  If the sentence here were reworded to say: I went to the store and I told

17   my son he could choose *any of a selected strawberry and chocolate ice cream*, one would not read

18   the sentence to require that he select both the strawberry and chocolate ice cream; rather, he could

19   select either.  In contrast, the term "at least one of" as used in *SuperGuide* related to each item: "a

20   desired program start time, a desired program end time, a desired program service, and a desired

21   program type."   By using the term "selected" here the drafter provided for a selection between the

22   "Z direction" adjustment and the "yaw" adjustment, not a selection of different precise

23   adjustments within the "Z direction" and "yaw."  This is apparent when the clause is read in full

24   with the second half of the paragraph allowing for the established "Z direction and/or yaw

25   adjustment."  Thus, in the sentence above, once my son selected his ice cream, the ice cream

26   vendor assembled his strawberry and/or chocolate ice cream cone.

27   Second, *SuperGuide* involved a series of items, not just two items joined by an "and" as is

28   the case here.  Courts considering similar phrases involving a set of only two items have

1    concluded that an either or both construction is proper.  *See, e.g.*, *Radware Ltd. v. A10 Networks,*

2    *Inc.*, No. 13-02024, 2014 WL 1572644, at *7 (N.D. Cal. Apr. 18, 2014) (holding that *SuperGuide*

3    was "distinguishable because it involved selecting from a set of more than two items "); *Joao Bock*

4    *Transaction Sys., LLC v. First Nat. Bank*, No. 11-6472, 2013 WL 3199981, at *7 (N.D. Ill. June

5    24, 2013) (holding that "'one of . . . and . . .' means 'one or more of the items in the list' or 'either

6    or both of the items in the list.'").  In *Radware*, the court declined to apply the phrase "at least one

7    of" in the conjunctive where it only required a selection between two parameters separated by an

8    "and." 2014 WL 1572644 at *7.  The court instead concluded that "[t]he inventors used 'at least

9    one of' hops and latency as a shorthand for hops, or latency, or hops and latency." *Id.*  Both the

10   *Radware* court and the court in *Joao Bock Transaction Sys.* relied on the context of the claim term

11   at issue to determine whether a conjunctive or disjunctive construction was proper.  *Radware*,

12   2014 WL 1572644 at *6-7; *Joao Bock Transaction Sys.*, 2013 WL 3199981 at *7.

13        The Court thus turns to the context of the claim term here starting with the language of the

14   claim itself; in particular, the second clause of the paragraph with the claim term at issue.  This

15   clause uses "and/or" rather than "and."  The use of "and/or" in the second clause suggests that the

16   first clause should also be read in the disjunctive; in other words, if the claim requires that the

17   invention maintain the said Z direction or yaw adjustment (or both), as it does, then the preceding

18   clause must mean Z direction and yaw adjustment (or both) as well.   On the other hand, if that is

19   the intended construction it is unclear why the patentee did not simply use "and/or" in both clauses

20   when referencing the "Z direction" and "yaw adjustment."

21        At oral argument, Plaintiff suggested that the patentee used the "any of a" language

22   because at the time the patent was drafted a claim had been rejected in unrelated proceedings

23   before the United States Patent and Trademark Office because the term "and/or" was found

24   indefinite under 35 U.S.C. § 112.  The Court accordingly granted Plaintiff leave to submit

25   supplemental briefing regarding this issue and both parties have done so.  (Dkt. Nos. 79 & 80.)

26   Plaintiff's supplemental brief indicates that it was not until last year that the Patent Trial and

27   Appeal Board overturned the prior indefiniteness ruling and found that use of the term "and/or"

28   was proper and "cover[ed] embodiments having element A alone, element B alone, or elements A

United States District Court
Northern District of California

10

1    and B taken together." (Dkt. No. 79-1 at 6.)  After the applicant appealed, the Examiner submitted

2    a brief arguing that rather than "and/or" a patentee should use language along the line of "'having

3    any of the following features.'" (Dkt. No. 79-4 at 25.)  This procedural history suggests a basis

4    for a patentee to be wary of the term "and/or" and why the patentee would have instead used "any

5    of a."  Further, a patentee might believe that the "and/or" in the second clause was not ambiguous

6    given that it refers directly to the Z direction and yaw adjustment in the first clause which is

7    preceded by the "any of a" language.

8            Plaintiff's construction is bolstered by the specification.   In describing the preferred

9    embodiment at Figure 4, the specification states:

10               The Z tube is secured to the cross tube by the Z clamp assembly **30**.
                 The Z clamp assembly allows adjustment of the Z tube in the Z
11               (in/out) direction **41** to effect a proper height or depth for the sonar
                 head, and it also allows a yaw adjustment **40** to position the sonar
12               head parallel to the boat.

13   '520 Patent Col. 3:23-27.  The clause "and it also allows a yaw adjustment" does not mandate both

14   a Z direction adjustment and a yaw direction adjustment; rather, it provides that in addition to a Z

15   direction adjustment a yaw adjustment is also possible.  The Court is not persuaded by

16   Defendant's contrary reading of this language as requiring a yaw adjustment; "allows" is

17   permissive not mandatory.  Thus, based on this specification language along with the claim

18   language itself, the Court concludes that a person of ordinary skill in the art would understand the

19   term "any of a selected" to mean both the "Z direction" and "yaw" adjustment, or either the "Z

20   direction" adjustment or the "yaw" adjustment.  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313

21   (Fed. Cir. 2005) (a "person of ordinary skill in the art is deemed to read the claim term not only in

22   the context of the particular claim in which the disputed term appears, but in the context of the

23   entire patent, including the specification.")

24           The Court therefore construes "any of a selected Z direction and yaw adjustment" to mean

25   the "Z tube coupling mechanism is operable to release said Z tube to establish" either a Z direction

26   adjustment or yaw adjustment or both a Z direction and yaw adjustment.

27                                        **CONCLUSION**

28           For the reasons set forth above, the Court construes the disputed claim terms of the patent-

United States District Court
Northern District of California

in-suit as follow:

| Claim Term | Court's Construction |
|---|---|
| "Z direction" | "In/out direction" |
| "Any of a selected Z direction and yaw adjustment" | Plain and ordinary meaning, read in the disjunctive. |

The parties are ordered to appear for a further case management conference on February 26, 2015 at 1:30 p.m. in Courtroom F, 450 Golden Gate Ave., San Francisco, California 94102. Their joint case management conference statement should propose a schedule for resolution of this action.

**IT IS SO ORDERED**.

Dated: February 2, 2015



JACQUELINE SCOTT CORLEY

United States District Court
Northern District of California